# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| In re: EpiPen Direct Purchaser Litigation | File No. 6:22-MC-33-CEM-LHP |
| THIS DOCUMENT RELATES TO:<br><br>*All Actions* | |

## MEMORANDUM OF LAW IN SUPPORT OF
## NON-PARTY LAURENCE F. DOUD III'S TIME SENSITIVE MOTION
## FOR A PROTECTIVE ORDER TERMINATING DEPOSTION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................. 6

ARGUMENT ..................................................................................................... 12

    A.    Legal Standard ................................................................................ 12

    B.    Defendants Do Not Require Mr. Doud's Testimony ....................... 13

    C.    The Sought Testimony Implicates Mr. Doud's Fifth
           Amendment Rights .......................................................................... 20

CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**                                            **Page(s)**

*Cavalier Clothes, Inc. v. Major Coat Co.*,
  1995 WL 314511 (E.D. Pa. May 18, 1995) .......................................................... 5

*Chambers v. Sygma Network, Inc.*,
  2013 WL 1775046 (M.D. Fla. Apr. 25, 2013) .................................................. 13

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
  888 F.3d 753 (5th Cir. 2018) .......................................................................... 4

*Digital Assurance Certification, LLC v. Pendolino*,
  2017 WL 4342316 (M.D. Fla. Sept. 29, 2017) ................................................ 13

*Digital Equip. Corp. v. Sys. Indus., Inc.*,
  108 F.R.D. 742 (D. Mass. 1986) ...................................................................... 14

*In re Fannie Mae 2008 Sec. Litig.*,
  891 F. Supp. 2d 458 (S.D.N.Y. 2012) ................................................................ 4

*FWK Holdings LLC v. Shire PLC*,
  2017 WL 11449668 (D. Mass. Oct. 10, 2017) ................................................ 17

*Hahn v. Hunt*,
  2016 WL 1587405 (E.D. La. Apr. 20, 2016) .................................................... 14

*In re Loestrin 24 Fe Antitrust Litig.*,
  261 F. Supp. 3d 307 (D.R.I. 2017) .................................................................. 16

*Mitchell v. United States*.
  526 U.S. 314 (1999) ......................................................................................... 20

*In re Namenda Direct Purchaser Antitrust Litig.*,
  2019 WL 6242128 (S.D.N.Y. Aug. 2, 2019) ...................................................... 4

*RAD Servs., Inc. v. Aetna Cas. & Sur. Co.*,
  808 F.2d 271 (3d Cir. 1986) ............................................................................. 5

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984) ........................................................................................... 12

*In re Stabile,*
   436 F. Supp. 2d 406 (E.D.N.Y. 2006)..................................................................4

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.,*
   2021 WL 214302 (E.D. Pa. Jan. 21, 2021)..........................................................4

*Topo v. Dhir,*
   210 F.R.D. 76 (S.D.N.Y. 2002) ..........................................................................19

*Trigeant Ltd. v. Petroleos De Venezuela, S.A.,*
   2009 WL 10668731 (S.D. Fla. May 5, 2009)......................................................13

*United States v. Alcatel-Lucent France, SA,*
   688 F.3d 1301 (11th Cir. 2012)............................................................................4

*United States v. Austin,*
   786 F.2d 986 (10th Cir. 1986)..............................................................................4

*United States v. Duran,*
   884 F. Supp. 573 (D.D.C. 1995) ..........................................................................6

*United States v. Eason,*
   920 F.2d 731 (11th Cir. 1990)..............................................................................4

*United States v. Georgalis,*
   631 F.2d 1199 (5th Cir. 1980)..............................................................................4

*United States v. Hamilton,*
   48 F.3d 149 (5th Cir. 1995)..................................................................................4

*United States v. HSBC Bank USA, N.A.,*
   2013 WL 3306161 (E.D.N.Y. July 1, 2013)........................................................4

*United States v. Klinger,*
   128 F.3d 705 (9th Cir. 1997)................................................................................6

*United States v. Leitch,*
   2013 WL 753445 (E.D.N.Y. Feb. 28, 2013).........................................................4

*United States v. Lipps,*
   659 F.2d 960 (9th Cir. 1981)................................................................................4

*United States v. Morgan,*
  956 F.2d 279 (10th Cir. 1992).................................................................... 4

*United States v. Rivas-Macias,*
  537 F.3d 1271 (10th Cir. 2008).................................................................. 5

*United States v. Sanders,*
  95 F.3d 449 (6th Cir. 1996)........................................................................ 4

*United States v. Vandetti,*
  623 F.2d 1144 (6th Cir. 1980).................................................................... 6

*United States v. Zemba,*
  59 Fed. Appx. 459 (3d Cir. 2003) .............................................................. 4

*Walden v. Georgia-Pac. Corp.,*
  126 F.3d 506 (3d Cir. 1997)........................................................................ 4

*West v. City of Albany, Georgia,*
  830 F. App'x 588 (11th Cir. 2020) ........................................................... 19

*In re WorldCom, Inc. Sec. Litig.,*
  2005 WL 375315 (S.D.N.Y. Feb. 17, 2005) .............................................. 5

*In re Zetia (Ezetimibe) Antitrust Litig.,*
  2020 WL 3446895 (E.D. Va. June 18, 2020) ............................................ 4

**Other Authorities**

Fed. R. Civ. P. 26(b)(2)(C)(i)............................................................ 5, 13, 15

Fed. R. Civ. P. 26(c)(1) ............................................................................... 1

Fed. R. Civ. P. 26(c)(l)(D)........................................................................ 13

Fed. R. Civ. P. 30(d)(3)(A) .................................................................. 1, 12

Fed. R. Civ. P. 30(d)(3)(B).................................................................... 12

Fed. R. Civ. P. 45(d)(3)(A) .................................................................. 1, 13

iv

Laurence F. Doud III, by and through his undersigned counsel, respectfully submits this Memorandum of Law in support of his motion, pursuant to Rules 30(d)(3)(B), 45(d)(3)(A)(iv) 26(b)(1), 26(b)(2)(C), and 26(c)(1) of the Federal Rules of Civil Procedure, for a protective order terminating the deposition conducted pursuant to a subpoena dated August 17, 2022 (the "Subpoena") served on him by counsel for defendants in the case captioned *In re EpiPen Direct Purchaser Litigation* currently pending in the United States District Court for the District of Minnesota, Case No. 20-cv-00827-ECT/JFD ("*EpiPen*"), together with such other and further relief as the Court deems to be just and proper, including an award of expenses under Rule 30(d)(3)(C). Mr. Doud's former employer, Rochester Drug Co-operative, Inc. ("RDC"), is a putative class representative in *EpiPen*.

This motion is being brought in the federal district court for the Middle District of Florida pursuant to Rule 45(d)(3)(A) because this is the judicial district in which compliance with the Subpoena is required. *See* Fed. R. Civ. P. 45(d)(3)(A); *see also* Fed. R. Civ. P. 26(c)(1) and Fed. R. Civ. P. 30(d)(3)(A).

## **INTRODUCTION**

Mr. Doud, a non-party to the *EpiPen* case, has already appeared in response to the Subpoena, and fully answered all of Defendants' questions even remotely

related to the claims and defenses in that case.[1]  However, towards the end of the deposition, defense counsel departed from the subject matter related to *EpiPen*, and turned to examining Mr. Doud regarding civil litigation and criminal charges completely unrelated to any claim or defense in the case.  This line of questioning was instead designed to harass, embarrass, and annoy Mr. Doud by bringing sensitive, but utterly irrelevant, information into the record, and engage in the disfavored and sharp practice of asking questions to elicit invocations of the privilege against self-incrimination.  Mr. Doud declined to testify on these matters; the parties otherwise completed the deposition and agreed to terminate the deposition pending Mr. Doud's motion to obtain a ruling on the specific topics about which Defendants sought testimony.

Mr. Doud previously served as RDC's CEO; however, he has not held this position or been employed by the company since 2017.  *See* Steinfeld Decl. ¶ 7.  As Defendants knew or should have known,[2] Mr. Doud has successfully quashed *two* virtually identical non-party subpoenas in separate antitrust cases, *Loestrin* and

---

[1]  A copy of the Subpoena is attached as Exhibit A to the Declaration of Adam Steinfeld, filed concurrently herewith (the "Steinfeld Decl.").  A transcript of Mr. Doud's deposition testimony will be submitted as Exhibit B, pending Mr. Doud's motion to submit the transcript under seal.

[2]  The *EpiPen* defendants, each of whom issued the Subpoena, are Express Scripts Inc. and Medco Health Solutions, Inc., CaremarkPCS Health, L.L.C., Caremark, L.L.C., Caremark Rx, L.L.C., and CVS Caremark Part D Services, L.L.C., OptumRx, Inc. (together the "PBM Defendants"), and Mylan Inc. and Mylan Specialty L.P. (together, "Mylan").

*Intuniv*, in motions decided in this District and in the Southern District of Florida, precisely to prevent such improper questioning.[3]  Here, Mr. Doud agreed to give deposition testimony, and did so regarding numerous relevant issues related to the *EpiPen* case, for several hours.  Mr. Doud only objected to testifying regarding two narrow topics completely unrelated to that case: (a) criminal proceedings against RDC and Mr. Doud, which are unrelated to RDC's purchases and sales of EpiPen, and (b) claims he has made against his former employer, RDC, in a totally separate pending civil litigation, wherein he is suing for wrongful termination and defamation in the Southern District of New York.  *See Doud v. Rochester Drug Co-operative, Inc.*, Case 1:18-cv-03026 (S.D.N.Y.) (filed Apr. 5, 2018).

The subpoenas quashed in *Loestrin* and *Intuniv* sought the same information at issue here, and under similar circumstances.  Defendants were made aware of these orders, yet for reasons undisclosed, "disagree[d] that they would apply to this situation," and insisted on harassing and annoying Mr. Doud with irrelevant questions.

It is unclear why Defendants have pressed such harassing conduct.  Neither the criminal proceedings nor Mr. Doud's suit against RDC have any bearing on the

---

[3] *See* ECF No. 19, *In re Loestrin 24 Fe Antitrust Litigation*, Case No. 18-mc-22581-CMA (S.D. Fla. July 5, 2018) ("*Loestrin*"); ECF No. 24, *In Re: Intuniv Antitrust Litig.*, Case No. 6:18-mc-62-Orl-41DCI (M.D. Fla. January 17, 2019) ("*Intuniv*").  These orders are appended to the Steinfeld Decl. as Exs. E & G.

*EpiPen* case, including on the adequacy of his former employer, RDC, to serve as a class representative in that case.[4] Nor will Mr. Doud's credibility be at issue: he is not a witness for RDC in the *EpiPen* case, and moreover, an employee's crimes cannot be used to impeach his employer.[5]

---

[4] Multiple courts have held that RDC's Deferred Prosecution Agreement ("DPA") has no bearing on RDC's adequacy under Fed. R. Civ. P. 23. *See In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2021 WL 214302, at *6 (E.D. Pa. Jan. 21, 2021) ("the criminal action against Rochester does not render it an inadequate class representative."); *In re Zetia (Ezetimibe) Antitrust Litig.*, 2020 WL 3446895, at *23 (E.D. Va. June 18, 2020) ("the DPA and related conduct are not disqualifying because they do not directly bear on the issue of whether RDC can serve as an adequate class representative in this case."), *report and recommendation adopted*, 481 F. Supp. 3d 571 (E.D. Va. 2020), *vacated and remanded on other grounds*, 7 F.4th 227 (4th Cir. 2021); *In re Namenda Direct Purchaser Antitrust Litig.*, 2019 WL 6242128, at *2 (S.D.N.Y. Aug. 2, 2019) (DPA inadmissible because it "does not bear on the issues that are to be tried"). Indeed, it is not even admissible. *E.g.*, *United States v. Leitch*, 2013 WL 753445, at *3 (E.D.N.Y. Feb. 28, 2013) (DPA not a conviction); *United States v. HSBC Bank USA, N.A.*, 2013 WL 3306161, at *1-2 (E.D.N.Y. July 1, 2013) (DPA not a guilty plea); *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012) (non-prosecution agreements are inadmissible); *In re Stabile*, 436 F. Supp. 2d 406, 408 (E.D.N.Y. 2006) (DPA not a conviction). *See also In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 785-86 (5th Cir. 2018) (reversible error to admit DPA, despite "door-opening" argument); *United States v. Alcatel-Lucent France, SA*, 688 F.3d 1301, 1304 (11th Cir. 2012) (where a district court approves a DPA, a conviction has not occurred); *United States v. Zemba*, 59 Fed. Appx. 459, 461 (3d Cir. 2003) (Rule 609 objection properly sustained, as Accelerated Rehabilitation Disposition is "not a conviction"); *United States v. Hamilton*, 48 F.3d 149, 153 (5th Cir. 1995) ("[W]hen adjudication of guilt is deferred, there is no 'conviction.'"); *United States v. Georgalis*, 631 F.2d 1199, 1203 (5th Cir. 1980) (Rule 609 violated when prosecutor attempted to cross-examine defendant about his deferred adjudication for felony check fraud).

[5] *See, e.g.*, *Walden v. Georgia-Pac. Corp.*, 126 F.3d 506, 524 (3d Cir. 1997) ("It is only the testifying witness' own convictions that will bear directly on the likelihood that he or she will testify truthfully. Accordingly, it is axiomatic that it is only the testifying witness' own prior convictions that should be admissible on cross-examination to impeach his credibility."); *United States v. Austin*, 786 F.2d 986, 992 (10th Cir. 1986) ("[I]t is the testifying witness' own prior conviction that is admissible on cross-examination to impeach his credibility or on redirect to rehabilitate him . . . We have found no case, and the Government has not cited one, in which a conviction other than that of the witness himself was properly admitted on the issue of his credibility." (citation omitted)); *United States v. Morgan*, 956 F.2d 279 (10th Cir. 1992) (same); *United States v. Sanders*, 95 F.3d 449, 454 (6th Cir. 1996) (same); *United States v. Eason*, 920 F.2d 731, 735 (11th Cir. 1990) ("a conviction other than that of the witness himself is not admissible on the issue of the witness's credibility"); *United States v. Lipps*, 659 F.2d 960, 962

Furthermore, Defendants have not yet sought to depose a corporate representative of RDC pursuant to Rule 30(b)(6) — a source that will be more convenient and less burdensome than deposing a non-party. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). A 30(b)(6) witness of RDC will be able to provide any relevant testimony regarding Mr. Doud's suit and the criminal proceedings, both of which are already exhaustively documented in the public record.[6] The burden on Mr. Doud, a non-party, to testify in *EpiPen* solely because he was formerly employed by plaintiff RDC, and is pursuing a civil case arising from that employment, outweighs any relevance considerations on these facts.

Finally, any questions touching on criminal charges against Mr. Doud himself will unavoidably implicate Mr. Doud's Fifth Amendment rights against self-incrimination. Intentionally asking questions of a witness to elicit Fifth Amendment invocations is not permitted.[7] Simply put, Mr. Doud, a non-party who left RDC's

---

(9th Cir. 1981) ("Rule 609(a) . . . does not authorize the introduction of a defendant's prior convictions to impeach another witness").

[6] In the first place, these "are matters that any court considering RDC as a proposed class representative can take judicial notice of," as Judge Altonaga observed in *Loestrin*. Steinfeld Decl., Ex. F at 40:19-20.

[7] *See RAD Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 277-78 (3d Cir. 1986) (calling it a "sharp practice[]" for a lawyer to engage in "the systematic interrogation of witnesses on direct examination . . . know[ing] they will assert the privilege against self-incrimination."); *In re WorldCom, Inc. Sec. Litig.*, 2005 WL 375315, at *5 (S.D.N.Y. Feb. 17, 2005) (Judge Cote states she is unlikely to allow substantive questions to be posed to witnesses who would invoke their Fifth Amendment privilege); *Cavalier Clothes, Inc. v. Major Coat Co.*, 1995 WL 314511, at *6 (E.D. Pa. May 18, 1995) (criticizing counsel for taking deposition of a witness who counsel knew would invoke his privilege against self-incrimination). *See also United States v. Rivas-Macias*, 537 F.3d 1271, 1276 n.3 (10th Cir. 2008) ("we have repeatedly held that neither the prosecution

employ in 2017, has the right to decline to testify regarding those proceedings beyond the information Defendants already have through the public record.

In short, Mr. Doud has already complied with the Subpoena, and answered all relevant questions Defendants asked to the extent of his knowledge, without exception. He should not be dragged back to deposition for the sole purpose of placing unnecessarily cumulative or irrelevant statements on the record under oath, or to be harassed with questions regarding criminal charges completely unrelated to the conduct at issue in *EpiPen*. The burden is compounded by the fact that the criminal proceedings involving Mr. Doud are on post-verdict motions. This Court should grant a protective order terminating the deposition, which is otherwise concluded, and preclude defense counsel from seeking further testimony from Mr. Doud.

## **FACTUAL AND PROCEDURAL BACKGROUND**

### The *EpiPen* Litigation

RDC is one of two named plaintiffs in *EpiPen*, which is a class action alleging that EpiPen manufacturer Mylan paid three pharmacy benefit managers for favorable formulary placement of EpiPen and disfavored formulary placement of competing

---

nor the defense may call a witness to the stand simply to compel him to invoke the privilege against self-incrimination."); *United States v. Klinger*, 128 F.3d 705, 709 (9th Cir. 1997) (same); *United States v. Vandetti*, 623 F.2d 1144, 1147 (6th Cir. 1980) (same); *United States v. Duran*, 884 F. Supp. 573, 575 (D.D.C. 1995) ("impermissible" for counsel to ask questions "solely for the purpose of allowing the jury to hear [the witness] invoke the Fifth Amendment").

epinephrine auto-injector ("EAI") devices, in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO") and Section 2 of the Sherman Act, 15 U.S.C. § 2. As a result of this scheme, direct purchasers of these EAI devices overpaid. The case is currently pending in the United States District Court for the District of Minnesota before Judge Eric Tostrud at docket number 20-cv-00827-ECT-JFD. *See* Steinfeld Decl., Ex. C (*EpiPen* First Amended Consolidated Class Action Complaint, ECF No. 271).

The essence of Plaintiffs' complaint is that Mylan and each of the PBM Defendants (CVS Caremark, Express Scripts, and OptumRx) used bribes and mail/wire fraud to corrupt legitimate enterprises that were established to sell, promote, recommend for purchase, and administer prescriptions for EpiPens. Mylan knowingly used EpiPen price increases to pay each of the PBM Defendants for favorable and exclusive EpiPen formulary placement, since that increased the "rebates" and fees that Mylan paid to the PBMs. Steinfeld Decl., Ex. C ¶¶ 111-27, 190-231.[8] The PBMs, in turn, pocketed that money, and in so doing abandoned their respective, publicly-stated missions to work on their clients' behalf to encourage

---

[8] PBMs are retained by private and public health plans and insurers, who in turn delegate to the PBMs day-to-day control over formulary management decisions, including which drugs are covered, and drug pricing negotiations with manufacturers. For decades, the PBMs have marketed themselves by representing that they work on their clients' behalf to reduce drug costs, by using formulary decisions to push patients to lower-priced drugs, and by penalizing manufacturers who raise their prices too much by giving formulary preference to lower-priced drugs. *See* Steinfeld Decl., Ex. C ¶¶ 92-99.

price competition between drugs and thereby drive down drug costs. Mylan's payments to the Defendant PBMs, using list price increases, coopted the PBMs into acting contrary to their clients' interests (and the PBMs' stated missions) by instead using the PBMs' control over formulary decisions to line their own pockets and, consequently, Mylan's. Steinfeld Decl., Ex. C ¶¶ 79-89. But for this bribery and kickback scheme, Mylan would have been incentivized to lower EpiPen list prices to compete for formulary placement. Instead, Mylan was able to nearly triple the price of EpiPens over four years, despite the introduction of new EAI competition. Steinfeld Decl., Ex. C ¶ 119.

Discovery in *EpiPen* is ongoing. To date, Plaintiff RDC has produced over sixteen thousand (16,000) documents in response to over fifty (50) requests for production, and answered forty (40) interrogatories propounded by Defendants. Steinfeld Decl. ¶ 6. However, Defendants have not availed themselves of the opportunity to depose RDC itself, through a corporate representative pursuant to Fed. R. Civ. P. 30(b)(6). *Id.*

**The Subpoena and Topics at Issue**

On August 31, 2022, five years after leaving his position as CEO of RDC, Mr. Doud voluntarily testified in response to Defendants' Subpoena. During the course of that deposition, Mr. Doud answered all of Defendants' questions even remotely concerning *EpiPen*, including questions concerning RDC's operations, relationships

with manufacturers and PBMs, and RDC's purchase and sales of pharmaceuticals, including EpiPen. *See* Steinfeld Decl. ¶ 8 (chart summarizing Doud testimony); *id.*, Ex. B (complete transcript). At the end of the deposition, however, Defendants veered off course, into topics that do not concern claims or defenses in *EpiPen* at all, but instead were intended to annoy and harass Mr. Doud, and cast irrelevant and inadmissible aspersions on RDC.

First, the Defendants introduced, and sought testimony about, an amended complaint filed by Mr. Doud against his former employer, RDC, and his successor CEO, Joseph Brennan, on July 12, 2018 in the United States District Court for the Southern District of New York. *See Doud v. Rochester Drug Co-Operative, Inc.*, 1:18-cv-03026 (S.D.N.Y.) (ECF No. 25); *see also* Steinfeld Decl., Ex. D ("Doud Complaint"). Mr. Doud's complaint states claims for wrongful termination, defamation and tortious interference with employment on facts entirely unrelated to *EpiPen*. The complaint alleges that RDC and its officers defamed Mr. Doud and wrongfully terminated him for conduct by others at RDC, which resulted in government investigations into the company's violations of the Controlled Substances Act beginning in 2013, including certain failures to properly report sales of certain controlled substances to pharmacies in the New York area.

The Defendants further sought testimony concerning those government investigations, which ultimately resulted in a DPA for RDC, and criminal charges

9

against Mr. Doud.  On April 22, 2019, RDC entered into a DPA with the United States Attorneys' Office for the Southern District of New York ("USAO").[9]  Under the DPA, RDC consented to the filing of a three-count Information charging RDC with conspiracy to distribute controlled substances outside the scope of professional practice and not for a legitimate medical purpose (21 U.S.C. § 846); conspiracy to defraud the United States (18 U.S.C. § 371); and knowingly failing to furnish suspicious order reports to the United States Drug Enforcement Administration (21 U.S.C. §§ 842(a)(5), (c)(2) and 18 U.S.C. § 2).  DPA ¶ 1.  Under the DPA, RDC accepted responsibility for the actions set forth in an exhaustive 51-paragraph Statement of Facts, which is part of the DPA (DPA ¶ 2 & Ex. C), and agreed to forfeit $20 million (DPA ¶ 3), among other remedies. A civil settlement is also included. (DPA ¶¶ 35-37 & Ex. G).[10]

For his part, Mr. Doud was charged with one count of conspiracy to distribute controlled substances and one count of conspiracy to Defraud the United States,

---

[9] The DPA and all of its exhibits are posted on the USAO's website at https://www.justice.gov/usao-sdny/press-release/file/1156381/download.

[10] On March 12, 2020 RDC filed for bankruptcy in the United States Bankruptcy Court for the Western District of New York, and is now in liquidation.  As part of that process, RDC and the Government entered into, and the Bankruptcy Court approved, a settlement agreement resolving all the Government's "claims related to the DPA and Civil Settlement."  *See* Settlement Agreement, *In re Rochester Drug Co-Op.*, No. 20-20230 (Bankr. W.D.N.Y. June 24, 2020), ECF No. 436-1 at 6, ¶ 5(c); *id.*, Order Approving Settlement Agreement, ECF No. 513 (July 17, 2020).

which charges arose from the same facts described in the DPA.[11] Following a jury trial, Mr. Doud was convicted in what the USAO characterized in a press release as a "first of its kind prosecution."[12] Mr. Doud has not been sentenced, and a motion for acquittal pursuant to Fed. R. Crim. P. 29 is pending before the trial court. *See* ECF Nos. 156, 200, *USA v. Doud*, Docket No. 1:19-cr-00285 (S.D.N.Y.).

At deposition, Mr. Doud declined to answer questions concerning his suit against RDC, or the criminal charges against himself and RDC, and the underlying government investigations. These subjects all ultimately relate to RDC's sales of controlled substances. But EpiPen is not a controlled substance. Regulations requiring recording and reporting sales of controlled substance do not apply to EpiPen. In short, the subjects at issue do not, and could not, implicate RDC's purchase or sale of EpiPen or any other EAI device. As such, these subjects are irrelevant to any claim or defense in the *EpiPen* case, but solely provide Defendants significant opportunities to burden, annoy, harass, and embarrass Mr. Doud and arouse prejudice against RDC. This is not proper, particularly when more efficient means exist (namely a 30(b)(6) deposition of an RDC representative) to provide Defendants with testimony on these subjects. As described below, two courts have

---

[11] The USAO described and publicized this case via press release available at https://www.justice.gov/usao-sdny/pr/manhattan-us-attorney-and-dea-announce-charges-against-rochester-drug-co-operative-and.

[12] See https://www.justice.gov/usao-sdny/pr/laurence-doud-former-ceo-pharmaceutical-distributor-convicted-conspiring-distribute.

entirely quashed subpoenas aimed at Mr. Doud, seeking substantially the same testimony. There is no basis for a different result here.

## ARGUMENT

### A.    Legal Standard

Although the federal rules permit liberal discovery, it "is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). "It is clear from experience that pretrial discovery by depositions . . . has a significant potential for abuse." *Id.* "This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Id.* at 34–35. Because of the potential for abuse, the federal rules "confer[ ] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required." *Id.* at 36.

Federal Rule of Civil Procedure 30(d)(3)(A) provides that "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." In ruling on a motion raised under Rule 30, "[t]he court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c)." Fed. R. Civ. P. 30(d)(3)(B). Rule 26(c), in turn, allows this Court, "for good cause, [to] issue an

order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]" Fed. R. Civ. P. 26(c)(1)(D). Similarly, Rule 45(d)(3)(A)(iv) provides that, "the court for the district where compliance is required must quash or modify a subpoena" that "subjects a person to undue burden."[13] Finally, this Court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

## B.    Defendants Do Not Require Mr. Doud's Testimony

Defendants' examination of Mr. Doud concerning his civil suit against RDC, and criminal proceedings against himself and RDC, imposes undue burden and expense because (a) the subject matter at issue is entirely irrelevant to *EpiPen*, and (b) information concerning these subjects may be obtained more conveniently from RDC itself, and from the extensive public record.

---

[13] The scope of discovery under Rule 45 is the same as the scope of discovery under Rule 26. *See, e.g., Digital Assurance Certification, LLC v. Pendolino*, 2017 WL 4342316, at *8 (M.D. Fla. Sept. 29, 2017) (citing *Baptiste v. Ctrs., Inc.*, 2013 WL 3196758, at *2 (M.D. Fla. June 21, 2013); *Chambers v. Sygma Network, Inc.*, 2013 WL 1775046, at *3 (M.D. Fla. Apr. 25, 2013) (quoting Rule 26(b)(1) and applying to a Rule 45 subpoena dispute)). However, even if the discovery requested is relevant, the subpoenaing party's need for the information must be balanced against the burden imposed on the responding party to provide it. *E.g., Trigeant Ltd. v. Petroleos De Venezuela, S.A.*, 2009 WL 10668731, at *2 (S.D. Fla. May 5, 2009).

First, neither the civil nor criminal proceedings about which Defendants seek testimony has anything to do with the facts underlying *EpiPen*. As described above, the criminal proceedings against both RDC and Mr. Doud concern RDC's sales of controlled substances. Mr. Doud's civil complaint alleges wrongful termination, defamation and tortious interference with employment contract. None of this conduct is remotely related to RDC's purchases of EpiPen, which is not a controlled substance.[14] Nor do any of the proceedings concern Mylan's conspiracies with the Defendant PBMs, the role of PBMs, or questions of pharmaceutical pricing at all. Questions concerning the claims, defenses, and subject matter of an unrelated litigation that has no bearing on the case at issue are unreasonably oppressive. *See Hahn v. Hunt*, 2016 WL 1587405, at *1, 3 (E.D. La. Apr. 20, 2016) (granting protective order to prohibit deposition questioning "concerning the claims, defenses and subject matter" of an unrelated state court litigation that had "nothing legally and little factually to do with this federal copyright infringement claim" in order "to avoid annoyance and oppression"). *See also Digital Equip. Corp. v. Sys. Indus., Inc.*, 108 F.R.D. 742, 744 (D. Mass. 1986) (vacating notice of deposition because it was noticed "for the purposes of harassment and annoyance" and merely to "waste the time of the deponent").

---

[14] A list of controlled substances is available on the DEA's website at https://www.deadiversion.usdoj.gov/schedules/orangebook/c_cs_alpha.pdf.

Second, the *EpiPen* Defendants may choose to seek testimony about these subjects from RDC, a party in *EpiPen*. Defendants have not availed themselves of Fed. R. Civ. P. 30(b)(6), through which RDC stands ready to provide testimony through a corporate representative. Moreover, information about the criminal proceedings and Mr. Doud's civil suit is extensively available through the public dockets and the Department of Justice website. *See supra* at 8. There is absolutely no reason to seek this (irrelevant) information from a non-party, former officer of RDC, as it would be "more convenient, [or] less burdensome" to question RDC itself about its conduct and the claims against it, both civil and criminal. Thus, Defendants seek testimony that is both "unreasonably cumulative or duplicative" and "can be obtained from some other source that is more convenient, [or] less burdensome" in the meaning of Rule 26(b)(2)(C)(i), and Mr. Doud should be protected from the burden and embarrassment of further testimony

In fact, two courts, including in this district, have previously held Mr. Doud's testimony on these subjects would be both cumulative and unduly burdensome, and entirely quashed Rule 45 subpoenas served by defendants in those cases. *Loestrin* was an antitrust case, concerning the brand manufacturer's alleged fraud on the Patent and Trademark Office, a pay-for-delay deal between brand and generic manufacturers to delay market entry of less-expensive generic versions of the birth-control drug Loestrin 24, and the brand's "product hop" and withdrawal of Loestrin

24 from the market to evade competition from less-expensive generics. *See generally In re Loestrin 24 Fe Antitrust Litig.*, 261 F. Supp. 3d 307 (D.R.I. 2017). RDC sought to represent a class of businesses like itself that also purchased these drugs directly from defendants and were overcharged as a result of impairment of generic competition. The *Loestrin* defendants subpoenaed Mr. Doud for testimony concerning his civil complaint and the government criminal investigations, arguing that these topics were relevant to RDC's adequacy to represent a class of direct purchasers.[15] On a motion brought in the Southern District of Florida, Judge Altonaga quashed the subpoena in short order, noting that "[t]he allegations that Mr. Doud makes in his complaint are matters that any court considering RDC as a proposed class representative can take judicial notice of." Steinfeld Decl., Ex. F at 40:18-20. To the extent additional testimony on these subjects would be required at all, "it's information that can be obtained from a source that is more convenient, less burdensome or less expensive than seeking it from a non-party, a retired CEO," and specifically through depositions of RDC itself. *Id.* at 40:24-41:1.

*Intuniv* is also an antitrust action, concerning another alleged pay-for-delay deal, this time between brand and generic manufacturers of the ADHD drug Intuniv,

---

[15] *See* Steinfeld Decl., Ex. F at 20:6-8; 29:11-13 (defendants sought deposition regarding "the allegations that Mr. Doud has made in his complaint and the underlying conduct relating to those allegations" and asserted "whether RDC was involved in criminal conduct and, perhaps, fraudulent conduct to cover up that activity is relevant to RDC's ability to adequately represent the class.").

intended to block generic competition in order to share monopoly profits between themselves. *See generally FWK Holdings LLC v. Shire PLC*, 2017 WL 11449668 (D. Mass. Oct. 10, 2017). RDC again sought to represent a class of direct purchasers who were overcharged on their purchases of brand and generic Intuniv as a result of defendants' anticompetitive agreement. Defendants there sought Mr. Doud's testimony concerning "alleged wrongdoing by RDC referenced in action filed by Mr. Doud against RDC," which, defendants claimed, would be relevant to RDC's appointment as a class representative. *See Intuniv* at 1-2. On a motion to quash, Magistrate Judge Daniel Irick of this Court held that Mr. Doud's deposition would be "unnecessarily burdensome." *Id.* at 4. Judge Irick concluded that Mr. Doud's complaint "and information about the DOJ investigation (through public filings such as the consent order in that matter) are available to [defendant] Shire to use in resisting RDC's attempt to serve as class representative, as is testimony from RDC." *Id.* at 3. That Mr. Doud would likely have different views on these issues did not make his deposition any more relevant. *Id.* at 2-3 ("Shire's argument that the information it seeks from Mr. Doud is not cumulative or duplicative is a conclusory one and boils down to: Mr. Doud is suing RDC . . . so his story *must* be different from theirs.") (emphasis in original). Likewise, defendants did not need Mr. Doud to confirm the allegations of his own complaint, which the *EpiPen* defendants repeatedly asked Mr. Doud in the *EpiPen* deposition. Steinfeld Decl., Ex. B at

175:10 – 182:15.  As Judge Irick noted during argument, "To expect that he would testify to something differently, then all of these allegations are not true is — I'm not seeing the reason for that."  Steinfeld Decl., Ex H at 38:17-20.

Furthermore, the *Inutniv* defendants "had ample opportunity to obtain the information" through a 30(b)(6) deposition of RDC, a "source that is more convenient, less burdensome, or less expensive" than deposing Mr. Doud.  *Intuniv* at 4.[16]  Judge Irick noted that the *Intuniv* defendants should have done this first: "It would be much less burdensome to get this information from RDC, who allegedly made these allegations . . . But instead, you've not gone to the party in this case to get this information.  You've now sought to go first to a non-party."  Steinfeld Decl., Ex. H at 39:25-40:6, *id.* at 55:15-30 ("the party seeking the deposition is engaged in this underlying litigation . . . and has had the opportunity to conduct a 30(b)(6) deposition of RDC that addresses exactly the same issues that are at play here in the deposition of Mr. Doud").[17]  Each of these concerns rendered a deposition

---

[16] During argument on the motion to quash, Magistrate Judge Irrick also adopted the *Loestrin* court's view that the criminal proceedings were a matter of public record, available to defendants and subject to judicial notice: "As an Article III Judge, if you presented that to me in arguing and opposing class representation, I'd take due judicial notice of that.  There's no question about the veracity of these DOJ documents."  Steinfeld Decl., Ex. H at 17:15-20.  Regarding characterizations of RDC's conduct in Mr. Doud's complaint, Magistrate Judge Irrick likewise found additional testimony unnecessary: "most of these things are just simply events that are probably obtainable at the DOJ website pursuant to various orders and consent orders and things in those cases.  I'm not seeing anything here that would be particularly within Mr. Doud's, you know, knowledge."  *Id.* at 38:13-18.

[17] *See also id.* at 57:16-21 ("In addition, I just don't see any basis for this deposition at this point for any burden to happen as to Mr. Doud because this discovery wasn't sought to be obtained

concerning Mr. Doud's civil case and the criminal proceedings disproportionately burdensome because, as Magistrate Judge Irick concluded: "any relevance that it has is really outweighed by the need to obtain that kind of information from specifically Mr. Doud as a non-party in this case when Mr. Doud has this pending civil case out there." Steinfeld Decl., Ex. H at 58:12-15. Defendants' subpoena directly to Mr. Doud was entirely quashed.

A protective order terminating Mr. Doud's deposition is even more warranted here than in those prior instances, because here Mr. Doud has given extensive testimony that is relevant to EpiPen, and the only remaining subjects left for Mr. Doud's deposition have a high probability to harass and oppress Mr. Doud and no countervailing relevance. Even if some relevance could be articulated, a protective order would nevertheless be warranted, particularly since the testimony Defendants seek is more conveniently available from RDC itself. *See West v. City of Albany, Georgia*, 830 F. App'x 588, 593 (11th Cir. 2020) (affirming district court's protective order barring certain 30(b)(6) deposition topics that were "at risk of causing the City undue burden and expense, and of questionable relevance disproportionate to the needs of her case"); *see also Topo v. Dhir*, 210 F.R.D. 76, 78 (S.D.N.Y. 2002) ("When the potential for abuse of procedure is high, the Court can

---

from the parties in this case. And it seems that it could have easily been obtained from the parties in this case, that is RDC").

19

and should act within its discretion to limit the discovery process, even if relevancy is determined.") (granting protective order barring defendants from inquiring into plaintiffs' potentially undocumented immigration status).

**C.    The Sought Testimony Implicates Mr. Doud's Fifth Amendment Rights**

Mr. Doud's deposition should also be terminated because Defendants' irrelevant questions will only result in Mr. Doud's invocation of his right against self-incrimination, thereby harassing and burdening Mr. Doud.  This improper purpose is further warrants a protective order.

Questions concerning Mr. Doud's own prosecution obviously implicate his right to avoid self-incrimination.  And this fundamental right remains while Mr. Doud awaits sentencing, and through the pendency of appeal. *See Mitchell v. United States*. 526 U.S. 314, 326 (1999) (privilege against self-incrimination is maintained until "the sentence has been fixed and the judgment of conviction has become final."). The fact of the charges against Mr. Doud and his conviction are documented in the public record. Defendants do not need Mr. Doud's testimony to confirm this. Questions about the substance of the case against Mr. Doud will unavoidably result in Mr. Doud's necessary invocation of his Fifth Amendment rights.  Questions about RDC's deferred prosecution agreement and Mr. Doud's civil case against RDC will raise the same concerns, as each relate to Mr. Doud's conduct in connection with sales of controlled substances.  In fact, the *Intuniv* court found that such examination

20

would be untenably burdensome on Mr. Doud even as a civil plaintiff in his own case:

> Due to the nature of the DOJ investigation and the topics of inquiry proposed for the deposition of Mr. Doud, there is a non-speculative concern that Mr. Doud would be required to invoke his Fifth Amendment right against self-incrimination in the proposed deposition, an outcome that may, among other things, affect his pending case against RDC.

*Intuniv* at 3.  At argument, Magistrate Judge Irick made clear that Mr. Doud's Fifth Amendment concerns weighed heavily in his decision:

> Mr. Doud has brought a case. And so if we were to allow this deposition to go forward, he may be forced into the position of asserting his Fifth Amendment right which could be taken as an adverse inference against him perhaps in his case that he brought concerning his employment issues.  I see that as a significant burden upon him.
>
> \* \* \*
>
> And I think there is a pregnant Fifth Amendment implication issue that to anyone . . . who has been practicing in this area can recognize and understand is a serious concern.  It places Mr. Doud in a position where he may have to invoke his Fifth Amendment rights and harm his underlying case in New York in order to protect his rights.  And perhaps he's not at the time or position to make that invocation that would harm him.

Steinfeld Decl., Ex. H, 21:19-25, 57:5-11.

Now, the "non-speculative concern" that justified quashing the *Intuniv* subpoena has resolved to record fact.  Mr. Doud will be within his right, and will, assert his Fifth Amendment privilege in response to any questions concerning the substance of the criminal proceedings against himself or RDC, or his own civil suit.

21

To compel him back to deposition merely to record these invocations, on topics ultimately irrelevant to the *EpiPen* case, would be an enormous burden with no countervailing benefit at all. *See supra* note 7 (citing cases).

## CONCLUSION

In light of the irrelevance of defense counsel's questions and their high probability to annoy, embarrass and oppress Mr. Doud, a protective order should issue terminating the deposition of Mr. Doud taken on August 31, 2022 in the matter of *In re EpiPen Direct Purchaser Litigation* Case No. 20-cv-00827-ECT-JFD (D. Minn.) and ordering that the Mr. Doud shall not be subject to any further discovery concerning his civil case against RDC, or any criminal proceedings against himself or RDC.

## <u>LOCAL RULE 3.1(G) CERTIFICATION</u>

I certify that counsel for non-party Laurence F. Doud III has conferred in good faith with counsel for the Defendants in an effort to resolve the dispute without court action, but no agreement was able to be reached.  Conferral occurred in person, by email, and by phone as described above.

Dated: September 21, 2022