**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In Re: In re: EpiPen Direct Purchaser
Litigation

Case No:   6:22-mc-33-CEM-LHP

**ORDER**

This cause came on for consideration without oral argument on the following motions filed herein:

> **MOTION:** NON-PARTY LAURENCE F. DOUD III'S TIME SENSITIVE MOTION FOR A PROTECTIVE ORDER TERMINATING DEPOSITION   (Doc. No. 1)
>
> **FILED:** September 21, 2022
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED**.

> **MOTION:** REDACTED MOTION TO TRANSFER AND MEMORANDUM IN SUPPORT (Doc. No. 30)
>
> **FILED:** November 9, 2022
>
> **THEREON** it is **ORDERED** that the motion is **DENIED**.

> **MOTION:** UNREDACTED MOTION TO TRANSFER AND MEMORANDUM IN SUPPORT (Doc. No. 32)
>
> **FILED:** November 9, 2022
>
> ---
>
> **THEREON** it is **ORDERED** that the motion is **DENIED as moot**.

**I. BACKGROUND.**

This matter stems from ongoing litigation in the District of Minnesota, styled *In re EpiPen Direct Purchaser Litigation*, No. 20-cv-00827-ECT/JFD (hereinafter "EpiPen Litigation"). *See* Doc. No. 1, at 1, Doc. No. 1-4.[1] The EpiPen Litigation was brought by Plaintiffs Rochester Drug Co-Operative, Inc. ("RDC") and Dakota Drug, Inc., on behalf of themselves and a prospective class of direct purchasers of EpiPen products. Doc. No. 1-4 ¶ 1.

On August 17, 2022, counsel for the defendants in the EpiPen Litigation subpoenaed non-party, Laurence F. Doud III ("Doud") for deposition. Doc. No. 1, at 1; Doc. No. 1-2. Doud appeared for the deposition with counsel on August 31, 2022, in Daytona Beach, Florida. *See* Doc. No. 10 (copy of Doud's deposition transcript filed under seal). Doud is a former chief executive officer of RDC (one of the putative class representatives in the EpiPen Litigation), although Doud is no

---

[1] All pinpoint citations to the record reflect the pagination as provided by CM/ECF, rather than the internal pagination provided on the documents.

longer employed with the company, and has not been involved with the company in any capacity since March 2018. Doc. No. 2 ¶ 7.

Doud's deposition spanned over six hours. *See* Doc. No. 10. And during the deposition, he answered numerous questions related to RDC's business, including RDC's purchase and sale of EpiPen. *See id. See also* Doc. No. 2 ¶ 8. But during the deposition, Doud also refused to answer numerous questions related to civil litigation he brought against RDC for wrongful termination, defamation, and tortious interference in the Western District of New York, questions related to criminal charges brought against both Doud and RDC in the Southern District of New York related to investigation into RDC's violations of the Controlled Substances Act beginning in 2013, and questions regarding RDC's subsequent bankruptcy filing. Doc. No. 1-1, at 7–8, 14–16. *See also* Doc. No. 10.[2] So, the

---

[2] As summarized by another court:

The Department of Justice ("DOJ") conducted a civil investigation of RDC from 2013 to 2015. *See Doud v. Rochester Drug Co-Operative, Inc.*, No. 1:18-cv-03026 (S.D.N.Y. Apr. 6, 2018). Thereafter, on or about March 8, 2017, the DOJ opened a criminal investigation of RDC relating to RDC's admitted failure to report to the U.S. Drug Enforcement Administration data concerning the sale, theft, or loss of prescription drugs. In his civil complaint in the Southern District of New York, Doud alleges that RDC and its current CEO, Joseph Brennan, wrongfully terminated him in April 2018 and wrongfully stated he was responsible for RDC's legal issues. Doud says Brennan and RDC did this in order to shield Brennan from the active federal criminal investigation. Doud's complaint further states that, on or about

parties agreed to terminate the deposition pending the Court's resolution of whether questioning on those particular topics should be permitted. Doc. No. 1-1, at 7.

After termination of the deposition, Doud filed the above-styled motion for a protective order, requesting that the Court issue a protective order terminating his August 31, 2022 deposition and ordering that Doud not be subject to further discovery regarding the civil case Doud brought against RDC or the criminal investigation or charges against Doud or RDC. Doc. Nos. 1, 1-1 through 1-9. The defendants from the EpiPen Litigation have filed a response in opposition to the motion for protective order. Doc. No. 31. *See also* Doc. No. 33 (unredacted version of response filed under seal). Doud has filed a reply. Doc. No. 25.

The defendants from the EpiPen Litigation also have filed a motion to transfer, in which they request that the Court transfer Doud's motion for protective order to the District of Minnesota to be considered along with the EpiPen Litigation, to "avoid disrupting the issuing court's management of the underlying litigation" and to "avoid conflicting decisions on the same issue." Doc. No. 30. *See also* Doc.

---

November 1, 2017, RDC received a federal grand jury subpoena.

*In re Loestrin 24 FE Antitrust Litig.*, No. 1:13-MD-2472-WES-PAS, 2018 WL 11326011, at *1 (D.R.I. Dec. 14, 2018) (record citations omitted).

No. 32 (unredacted version of motion to transfer filed under seal).[3]  Doud has filed a response in opposition.  Doc. No. 26.

Both matters are ripe for review.  Upon consideration, the motion to transfer (Doc. No. 30) will be denied and the motion for protective order granted (Doc. No. 1), for the reasons stated herein.

## II.   MOTION TO TRANSFER.

Pursuant to Federal Rule of Civil Procedure 45, subpoena-related motions must be filed in the district where compliance is required.  Fed. R. Civ. P. 45(d)(2), (3).  However, a Court may transfer a subpoena-related motion to the issuing court "if the person subject to the subpoena consents or if the court finds exceptional circumstances."  Fed. R. Civ. P. 45(f).  To determine whether exceptional circumstances exist, courts consider several factors, such as "the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation."  *The Dispatch Printing Co. v. Zuckerman*, No. 16-CV-80037-BLOOM/Valle, 2016 WL 335753, at *2 (S.D. Fla. Jan. 27, 2016) (quoting *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014)).  However,

---

[3] Given that the Court rules on Defendant's unredacted version of the motion without reference to the portions of the motion filed under seal, the Court **DENIES as moot** the unredacted version of the motion for the sake of completeness.

> the court's prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when the court has already ruled on issues presented by the motion or the same issues are likely to rise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

*AT&T, Corp. v. Voxon LLC*, No. 8:22-mc-43-WFJ-AAS, 2022 WL 17487984, at *1 (M.D. Fla. Dec. 7, 2022) (quoting Fed. R. Civ. P. 45(f), advisory committee's note (2013)).

Here, the defendants first argue that exceptional circumstances exist [4] warranting transfer because substantively, Doud's motion for protective order, and the questions the defendants seek to ask Doud at deposition, raise issues relevant to the EpiPen Litigation, to wit—RDC's adequacy as a class representative and other Fed. R. Civ. P. 23 requirements, the merits of RDC's claims, and the accuracy and completeness of RDC's productions in the EpiPen Litigation. Doc. No. 30, at 16. Thus, according to the motion, the court in the District of Minnesota would be better suited to consider the relevance of the information sought from Doud, particularly given that the court in the District of Minnesota has been routinely holding regular case management conferences to discuss ongoing discovery issues. *Id.* at 17–18.

---

[4] Doud does not consent to transfer, *see* Doc. No. 26, and thus consent is not further addressed herein.

Next, the defendants argue that the issues raised in Doud's motion for protective order are already pending before the court in the District of Minnesota because the defendants have filed a motion for sanctions against RDC related to Doud's deposition. *Id.* at 19. The defendants further point to another deponent, "Ms. Plouffe" to argue that similar issues arose at her deposition, a deposition which they have also held open. *Id.* at 20. So, according to the defendants, transfer of Doud's motion for protective order to the District of Minnesota would avoid the possibility of inconsistent rulings. *Id.*

Finally, the defendants contend that transfer of the matter would not impose any undue burden on Doud because Doud was represented at deposition by the same counsel representing RDC in the EpiPen Litigation, and the District of Minnesota has allowed argument on motions by remote means. *Id.* at 21–22.

Doud disagrees with each of the defendants' arguments, in particular arguing that his motion for protective order requires no particularized knowledge of the EpiPen Litigation and is only tangentially related thereto, resolution here does not raise the risk of inconsistent rulings given that the defendants' related motion for sanctions has since been denied, and that transfer would be burdensome. Doc. No. 26. *See also* Doc. No. 26-1.

Upon review, the Court agrees with Doud that the defendants have not established exceptional circumstances warranting transfer. A ruling here on the

motion for protective order (Doc. No. 1) does not appear to raise the possibility of inconsistent rulings, given that the defendant's related motion for sanctions has since been denied in the District of Minnesota, *see* Doc. No. 26-1,[5] and given that the issues raised in the motion for protective order relate to discrete categories of questions from Doud's deposition, *see* Doc. No. 10.  To the extent that the issues raised in the motion for protective order have any bearing on the substantive issues in the underlying action, this Court is capable of understanding those issues.  *See, e.g.*, *Balfour Beatty Infrastructure, Inc. v. PB&A, Inc.*, No. 6:16-mc-52-Orl-37GJK, 2016 WL 7743032, at *2 (M.D. Fla. Nov. 30, 2016), *aff'd*, 2017 WL 119771 (M.D. Fla. Jan. 12, 2017) (denying motion to transfer based upon arguments similar to those raised by the defendants).  While there is "no question" that the District of Minnesota is certainly more familiar with the underlying litigation, "that cannot be what Congress meant when it required a finding of exceptional circumstances, otherwise the exception would swallow the rule.  As a general matter, a Rule 45 subpoena-related motion will always be resolved by a court less familiar with the underlying litigation."  *Isola USA Corp. v. Taiwan Union Tech. Corp.*, No. 12-CV-01361-SLG,

---

[5] Also, to the extent that the defendants rely on a deposition of Ms. Plouffe allegedly raising similar issues to those raised here, there is no record evidence demonstrating that a similar motion has been filed as to Ms. Plouffe, that said motion raises similar issues, or that such similar issue is pending or has been resolved by the District of Minnesota.

2015 WL 5934760, at *3 (D. Mass. June 18, 2015), *report and recommendation adopted*, 2015 WL 5944286 (D. Mass. Feb. 2, 2015).  *See also In re Loestrin 24 FE Antitrust Litig.*, No. 18-22581-MC-ALTONAGA/Goodman, *available at* Doc. No. 1-6 (order declining to transfer motion and considering motion to quash), Doc. No. 1-7, at 40 (transcript of hearing addressing transfer issue).

Moreover, to the extent that the defendants argue that Doud was represented at deposition by the same counsel as represents RDC in the District of Minnesota, the Court does not find this to constitute an exceptional circumstance warranting transfer.  *Cf. Balfour Beatty Infrastructure, Inc.*, 2016 WL 7743032, at *2 (rejecting argument that because the third-party law firm subject to the subpoena also represented the plaintiff in the underlying litigation constituted an exceptional circumstance warranting transfer), *aff'd*, 2017 WL 119771 (M.D. Fla. Jan. 12, 2017).  In sum, the Court finds that Doud's interest in obtaining local resolution of the motion outweighs the factors relied upon by the defendants in support of transfer.

For these reasons, the Motion to Transfer (Doc. No. 30) is **DENIED**, and the unredacted version of the same filed under seal (Doc. No. 32) is **DENIED as moot**.

### III.   MOTION FOR PROTECTIVE ORDER.

Pursuant to the Federal Rules of Civil Procedure, deposition testimony "may be compelled by subpoena under Rule 45."  Fed. R. Civ. P. 30(a)(1).  During a deposition, "[a] person may instruct a deponent not to answer only when necessary

to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." *See* Fed. R. Civ. P. 30(c)(2). "At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order." Fed. R. Civ. P. 30(d)(3)(A).

In his motion, Doud contends that his deposition should be terminated to the extent that the defendants from the EpiPen Litigation seek to question him regarding his civil action against RDC and the criminal proceedings against RDC and Doud. Doc. Nos. 1, 1-1. He argues that the questions related to the civil case against RDC and the criminal proceedings against Doud and RDC are wholly irrelevant to the EpiPen litigation; that the information sought could be more conveniently obtained from RDC itself or the public record; it imposes an undue burden and expense on Doud to be required to answer these questions; and the testimony sought implicates Doud's Fifth Amendment right against self-incrimination. Doc. No. 1-1, at 18–27. *See also* Doc. No. 25. Doud also points to two cases from this Circuit in which courts have quashed subpoenas for his deposition under similar circumstances. Doc. No. 1-1, at 20–24; Doc. No. 25, at 12.

*See In re Loestrin 24 FE Antitrust Litig.*, No. 18-22581-MC-ALTONAGA/Goodman ("*Loestrin*"); *In Re: Intuniv Antitrust Litig.*, No. 6:18-mc-62-Orl-41DCI ("*Intuniv*"). *See also* Doc. No. 1-6 (copy of *Loestrin* Order); Doc. No. 1-7 (copy of *Loestrin* hearing transcript); Doc. No. 1-8 (copy of *Intuniv* Order); Doc. No. 1-9 (copy of *Intuniv* hearing transcript).

In response, the defendants contend that the deposition questions at issue are relevant to "many issues" in the EpiPen Litigation, "including—at a minimum—[RDC's] adequacy and typicality as a class representative under Federal Rule of Civil Procedure 23, the trustworthiness of certain of [RDC's] produced documents and data, and [RDC's] alleged financial harm." Doc. No. 31, at 4–5, 20–21. According to the defendants, there is no guarantee that Doud's testimony would mirror that of RDC's corporate representative. *Id.* at 18–19. And the defendants ask the Court to disregard Doud's arguments regarding his Fifth Amendment rights given that Doud did not raise the issue during his August 31, 2022 deposition, and he fails to submit a sworn affidavit here to support the argument. *Id.* at 18. The defendants also distinguish *Loestrin* and *Intuniv* as having involved motions to quash, rather than motions for protective order, and argue that the information at

- 11 -

issue from Doud's deposition was subsequently found relevant in those cases. *Id.* at 17, 21.[6]

Upon consideration of the parties' arguments and all related filings, as well as the docket in the EpiPen Litigation, the Court finds Doud's motion well taken. And in particular the Court finds persuasive the reasoning set forth in *Loestrin* and *Intuniv*.

In *Loestrin*, the court quashed a subpoena for Doud's deposition, by which the defendants sought Doud's testimony concerning RDC as well as his civil action against RDC, finding that the defendants sought information and testimony that could be obtained from a more convenient, less burdensome, and less expensive source. Doc. Nos. 1-6, 1-7. Specifically, the *Loestrin* court noted that any court may take judicial notice of the allegations made by Doud against RDC in his civil complaint; the information at issue could be obtained from a more convenient, less burdensome source—RDC itself; and without a demonstration that the information could not be obtained from a more convenient source, there was no showing that

---

[6] In the response, the defendants also make a host of allegations about counsel who appeared on behalf of Doud at deposition, counsel who also represents RDC in the EpiPen Litigation. Doc. No. 31, at 11–13. But the defendants do not make any argument as to why this lends support for denying the motion for protective order, nor do they cite any legal authority in support. *See id.* at 13–22. Accordingly, the Court has not further considered the argument.

the deposition of Doud on these subjects was proper.   *See* Doc. No. 1-7, at 41–43. *See also* Doc. No. 1-6.

Likewise, in *Intuniv*, the court found that the complaint and information about the criminal investigation against RDC/Doud were publicly available for use in resisting RDC's attempt to serve as class representative, as was available testimony from RDC itself.   Doc. No. 1-8, at 4.   *See also* Doc. No. 1-9.   The *Intuniv* court also noted that there was a "non-speculative concern that Mr. Doud would be required to invoke his Fifth Amendment right against self-incrimination," which also may have affected Doud's pending civil action against RDC.   Doc. No. 1-8, at 4.   In sum, the *Intuniv* court found that the information sought from Doud was unreasonably cumulative and duplicative, and that it could be more conveniently obtained from another source; the information could be obtained from discovery in the underlying action (*i.e.*, from RDC itself); and the discovery was outside of the scope of Rule 26(b)(1).   *Id.* at 5.

The defendants' attempts to distinguish this matter from *Loestrin* and *Intuniv* because Doud has filed a motion for protective order terminating further deposition, rather than a motion to quash prior to deposition, are unavailing.[7]

---

[7] Moreover, the Court agrees with Doud's argument in reply, *see* Doc. No. 25, at 12–13, that, to the extent that the defendants attempt to distinguish *Loestrin* on the basis that the information was found discoverable from RDC's Rule 30(b)(6) representative, such

Notably, given that Doud actually appeared for deposition in this matter as opposed to in *Loestrin* and *Intuniv*, the defendants were able to question Doud at length about his employment with RDC and RDC's actions with regard to purchase and sale of EpiPen. *See* Doc. No. 10. The defendants simply do not demonstrate that questioning Doud further on topics such as Doud's civil case against RDC, the criminal proceedings against RDC or Doud, or RDC's bankruptcy is necessary and/or appropriate, given that the information may be readily obtained from RDC itself, and these topics raise concerns that Doud may be required to invoke his Fifth Amendment right against self-incrimination.[8]  *See Loestrin*, Doc. Nos. 1-6, 1-7; *Intuniv*, Doc. Nos. 1-8, 1-9. And the defendant's argument that Doud's testimony may be different that RDC's 30(b)(6) representative is merely speculative. *See Intuniv*, Doc. No. 1-8, at 3–4 (finding same).[9]   Indeed, the Court questions why the defendants need to delve into these topics with Doud at all, given their apparent concession that the information about the civil and criminal proceedings at issue is

---

argument is unavailing, given that the Court was addressing testimony from *RDC itself*, not a third-party like Doud. *See* Doc. No. 31, at 21–22.

[8] From the review of the docket in the criminal matter against Doud, Doud's sentencing is currently scheduled for March 8, 2023, and post-trial motions remain pending. *See United States v. Doud*, No. 1:19-cr-285-GBD-1 (S.D.N.Y).

[9] It does not appear that the defendants have yet deposed RDC's 30(b)(6) corporate representative in the EpiPen Litigation. Doc. No. 2 ¶ 6. *See also EpiPen Litigation*, No. 0:20-cv-00827-ECT-JFD, Doc. No. 633 (D. Minn. Jan. 24, 2023) (approving stipulation for extension of deadline for RDC 30(b)(6) representative deposition through March 20, 2023).

available in the public record.   Doc. No. 31, at 16–17.   *See Intuniv*, Doc. No. 1-8, at 4 (finding that the complaint and information about the DOJ investigation were available through public filings to use in resisting RDC's attempt to serve as class representative); *Loestrin*, Doc. No. 1-7, at 41 ("The allegations that Mr. Doud makes in his [civil complaint against RDC] are matters that any court considering RDC as a proposed class representative can take judicial notice of.").

In sum, as found in *Loestrin* and/or *Intuniv*, the Court concludes that the information the defendants seek from Doud (*i.e.*, testimony about his civil case against RDC, RDC's bankruptcy, and the criminal proceedings against RDC and Doud) is outside the scope of Rule 26(b)(1), and it is unreasonably cumulative and duplicative as the defendants have not demonstrated that they could not obtain the discovery in the EpiPen Litigation, or indeed, from RDC itself.   *See* Fed. R. Civ. P. 26)(b)(2)(C).

**IV.   CONCLUSION**.

For the reasons stated herein, it is **ORDERED** as follows:

1. The Motion to Transfer (Doc. No. 30) is **DENIED**.

2. The Unredacted Motion to Transfer (Doc. No. 32) is **DENIED as moot**.

3. The Motion for a Protective Order Terminating Deposition (Doc. No. 1) is **GRANTED**, and Doud's deposition is hereby **TERMINATED**, for the reasons set forth herein.

4. Because no further action need be taken in this case, the Clerk of Court is **DIRECTED** to close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 3, 2023.

*Leslie Hoffman Price*

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties